UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
┌─────────────────────────────────────────┐
│ USDC SDNY                                │
│ DOCUMENT                                 │
│ ELECTRONICALLY FILED                     │
│ DOC #: _____            │
│ DATE FILED: __08/20/2024_____           │
└─────────────────────────────────────────┘
```

NORTHWAY MEDICAL CENTER CONDO,

                    Plaintiff,

    -against-

THE HARTFORD FINANCIAL SERVICES
GROUP, INC.,

                    Defendant.

20-cv-9864 (NSR)
OPINION & ORDER

NELSON S. ROMÁN, United States District Judge:

       Plaintiff Northway Medical Center Condo ("Plaintiff" or "Northway") asserts a breach of

contract claim against Defendant Sentinel Insurance Company Limited ("Defendant" or

"Sentinel") related to an insurance policy issued by Defendant. Before the Court is Defendant's

motion for summary judgment and Plaintiff's cross-motion for summary judgment pursuant to

Federal Rule of Civil Procedure 56. For the following reasons, Defendant's motion is granted and

Plaintiff's motion is denied.

## BACKGROUND

       The following facts are taken from the parties' Rule 56.1 statements, declarations,[1] and

exhibits, and are not in dispute, except where noted.

---

[1] In support of its motion, Defendant submitted: the Declaration of Karen Boyer (ECF No. 50, "Boyer Decl."); Boyer's Reply Declaration (ECF No. 59, "Boyer Reply Decl."); the Declaration of Expert Sarah G. Byer (ECF No. 51, "Byer Decl."); Byer's Reply Declaration (ECF No. 60, "Byer Reply Decl."); and the Declaration of Linda J. Gindele (ECF No. 52, "Gindele Decl."). In support of its motion, Plaintiff submitted: the Declaration of Jonathan E. Neumann (ECF No. 68, "Neumann Decl."); the Declaration of Nagai Rajendran (ECF No. 69, "Rajendran Decl."); Declaration of Herbert Weinstein (ECF No. 70, "Weinstein Decl."); and the Declaration of John Murray (ECF No. 74, "Murray Decl.").

I.  **Factual Background**

    *A.  The Property and Policy*

The building (the "Building") at issue in this case is located at 944 N. Broadway, Yonkers, NY 10701. (ECF No. 53, Defendant's Rule 56.1 Statement, "Def. 56.1," ¶ 2.) Sentinel issued Plaintiff a property insurance policy covering the Building, bearing a policy number of 16 SBA IW1133 (the "Policy"). (*Id.* ¶ 1.) The effective dates of the Policy were March 29, 2019 through March 29, 2020. (*Id.*) The Policy provides coverage for direct physical loss or damage to covered property caused by covered causes of loss and excludes coverage for losses specified under Section "B. EXCLUSIONS." The Policy provides, in relevant part:

    **A. Coverage**

    We will pay for direct physical loss of or physical damage to Covered Property at
    the premises described in the Declarations (also called "scheduled premises" in this
    policy) caused by or resulting from a Covered Cause of Loss.

    …

    **3. Covered Causes of Loss**

    RISKS OF DIRECT PHYSICAL LOSS unless the loss is:

        a. Excluded in Section **B., EXCLUSIONS**; or

        b. Limited in Paragraph **A.4.** Limitations; that follow.

    **4.  Limitations**

        a.  We will not pay for direct loss of or damage to:

        (3) The interior of any building or structure caused by or resulting from rain,
        snow, sleet, ice, sand or dust, whether driven by wind or not, unless:

            a) The building or structure first sustains physical damage by a Covered
            Cause of Loss to its roof or walls through which the rain, snow, sleet,
            ice, sand or dust enters; or

            b) The direct physical loss or physical damage is caused by or results
            from thawing of snow, sleet, or ice on the building or structure.

**B. EXCLUSIONS**

**2.** We will not pay for physical loss or physical damage caused by or resulting from:

    a.   Miscellaneous Types of Loss

        (1) Wear and tear;

        (2) Rust, corrosion, fungus, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself;

**3.** We will not pay for loss or damage caused by or resulting from any of the following. But if physical loss or physical damage by a Covered Cause of Loss results, we will pay for that resulting physical loss or physical damage.

    a.   **Negligent Work**: faulty, inadequate or defective:

        (2)  Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;
        (3)  Materials used in repair, construction, renovation or remodeling; or
        (4) Maintenance of part or all of any property on or off the "scheduled premises".

("The Policy," Boyer Decl., Ex. A at 29, 44-46.)

*B.  Plaintiff's Claim, Sentinel's Investigation, and the Denial of the Claim*

The Building was constructed with a cavity wall system consisting of an exterior wall, interior wall, and a gap in between those walls known as the cavity. (Byer Decl. ¶ 26.) On or about July 17, 2019, Plaintiff filed a claim with Sentinel under the Policy, claiming that the Building's brick veneer was bulging outward and pulling away from the rest of the structure. (Def. 56.1 ¶ 9.) In response, Sentinel retained Donan Engineering Company, Inc. ("Donan") to inspect the building and provide an opinion regarding the cause of the loss. (*Id.* ¶ 11.) Donan inspected the Building and issued a report dated August 8, 2019 ("Donan's August Report"). (*Id.* ¶ 12.) Donan attributed the bulging of the brick veneer to (1) improperly spaced brick ties in violation of the International Building Code and (2) inadequate anchorage of the brick veneer to the backup wall. (*Id.* ¶ 13.)

By letter dated August 8, 2019, Sentinel denied Plaintiff's claim. (*See* Boyer Decl., Ex. C.) In the letter, Sentinel wrote it "determined that the cause of the loss [was] due to inadequate anchorage of the brick veneer to the backup wall which caused long term displacement of the veneer and interior stud wall." (Boyer Decl., Ex. C at 1.) Sentinel also stated that "the damage to the brick wall is the result of negligent work and wear tear and deterioration over the course of several years" and directed Plaintiff to refer to the Policy. (*Id.* at 1-2.)

### C. *Plaintiff's Investigations and Sentinel's Response*

In or around August 2019, Plaintiff hired its own engineering consultant, Lawless & Mangione Architects & Engineers LLP ("L&M") to perform an investigation into the failure of the brick veneer of the Building. (Def. 56.1 ¶ 16.) L&M issued a report dated August 16, 2019 (the "L&M Report") summarizing its opinions and conclusions regarding the condition of the Building's exterior wall. (Gindele Decl., Ex. 4 "L&M Report".) L&M's reported observed, *inter alia*, rusting and moisture deterioration in the wall system. (Def. 56.1 ¶ 20.) Plaintiff did not disclose the L&M Report to Sentinel prior to the litigation. (*Id.* ¶ 21.)

In or around April 2020, Plaintiff retained a different expert, John Paul Murray, R.A., of Caseworks Design Group, LLC, to review and respond to Donan's August Report. (*Id.* ¶ 22.) After visually inspecting the Building on May 8, 2020, Mr. Murray prepared a report dated June 23, 2020 ("June Caseworks Report"). (*Id.* ¶ 23.) In that report, Murray made several observations: (1) reliance on the International Building Code ("IBC") is problematic and it may not have been in effect at the time of construction; (2) Donan's August Report fails to address vertical staggering of wall ties; (3) the location and sizing of the masonry probes performed and relied on appear inadequate; (4) the report fails to address how the Building received a Certificate of Occupancy if the construction did not conform to the IBC; and (5) "[t]he gap in vinyl floor ties along with tears in the wall covering represent an event-based occurrence." (Boyer Decl., Ex. D at 4.) Murray

ultimately concluded that "the damaged brickwork is the result of an event-based occurrence." (*Id.*)

In or around July 2020, Sentinel reengaged Donan to respond to the June Caseworks Report. (Def. 56.1 ¶ 26.) In a letter dated July 27, 2020 ("Donan's July Letter"), Donan affirmed its findings. (Boyer Decl., Ex. E.) Specifically, Donan determined that (1) the building façade did not contain any probes on the date of the study; (2) relying on the 1984 New York State Uniform Fire Prevention and Building code, the brick ties spacings are greater than required by the building code in effect at the time of construction; and (3) Murray's report fails to address the bowed brickwork and weathered masonry cracks, which indicate a historical rather than event-based occurrence. (*Id.* at 2.) Sentinel sent a letter dated August 25, 2020 informing Plaintiff that upon review of the June Caseworks Report and Donan's July Letter, coverage remained denied. (Def. ¶ 28.)

### D. The Parties' Experts

#### 1. Defendant's Expert

For the purposes of the instant litigation, Sentinel retained Sarah G. Byer., a Principal Engineer of EFI Global Engineering of New York, P.C. ("EFI") to inspect the Building and to determine the cause of the bulging of the brick veneer. (Byer Decl. ¶ 3.) Byer concluded that (1) the cause of damage "was the result of improper construction of the wall system" in violation of the 1977 Code Manual for the State Building Construction Code (the "1977 Code"), in effect at the time of construction; (2) evidence indicated the damage was progressive over many years; and (3) weather conditions could not have caused the damage. (Boyer Decl., Ex. 8, "Byer Expt. Rpt." at 10.) In reaching her conclusions, Ms. Byer reviewed documents provided by Sentinel, analyzed weather data, and conducted a visual inspection of the building. (Byer Expt. Rpt. at 2.)

First, Byer concluded that, based on a Freedom of Information Law ("FOIL") request to the Yonker's Building Department, the Building should have been designed under the 1977 Code. (*Id.* at 8.) Pursuant to that code, the spacing of the brick ties were non-compliant. (*Id.* at 9.) Second, Byer noted that proper construction of masonry walls includes flashing and weep holes to allow moisture to exit the wall cavity. (*Id.* at 9.) EFI observed no weep holes in the brick veneer at wall openings. Third, Byer observed that the Building's construction consisted of "primary steel frames with steel joists that supported concrete floor slabs." (*Id.*) At the exterior building walls, metal stud infill framing was constructed between the steel frames and concrete slabs. Based on site observations, Byer concluded that "the infill framing was not properly anchored to the main building structure." (*Id.*) The improper anchorage caused the metal studs to move and bow outward over time. Finally, Byer stated EFI observed no wind damage to the roofing or brick veneer, or any damage typically seen with sudden wind damage. (*Id.*) Despite Plaintiff's assertion that the brick veneer movement was due to a sudden rainstorm, Byer opined that "[m]oisture infiltration by itself on a specific [day] does not cause lateral movement and damages to brick veneer." (*Id.*) Byer noted that although moisture within the wall cavity could theoretically freeze and expand, temperatures were well above freezing in months preceding and following the relevant date.

### 2.  Plaintiff's Expert

Plaintiff retained John Paul Murray, RA, AIA, QEWI to rebut Byer's expert conclusions and Donan's July Letter. In his report, Murray primarily challenges Byer and Donan's conclusions with respect to the spacing of the brick ties. (Boyer Decl., Ex. 9, "Murray Rebut. Rpt." at 2.) Specifically, Murray asserts (1) Donan's methodology for determining the spacing of brick ties and condition of existing masonry ties is "unacceptable"; (2) Byer and Donan relied on the wrong provision of the 1977 Code; and (3) neither addressed the Yonkers Department of Buildings

"approval of the New Building application and plan, as well as inspections, sign-offs, and issuance of the Final Certificate of Occupancy in 1983." (*Id.*)

Murray found that the brick veneer wall was built to code. (*Id.* at 3.) Ultimately, he concluded that "the excessive rain along with pressure from 30 to 46 MPH wind gusts played a significant role in the singular event causing the wall to displace outward." (*Id.* at 2.) Murray continued to opine that "[t]he reported lack of metal ties is most likely the result of disintegration and/or complete disengagement from the veneer during the aforementioned event." (*Id.* at 2-3.)

## II.  Procedural History

Plaintiff commenced the instant action against The Hartford Financial Services Group, Inc. ("Hartford") in the Supreme Court of New York, County of York asserting claims for (1) violation of New York General Business Law § 349 ("Section 349") and (2) common law breach of contract. (*See* ECF No. 1, Ex. A.) In its Complaint, Plaintiff alleged an "event-based occurrence" damaged the brickwork on the building, resulting in $1.2 million dollars in damages. (Compl. ¶ 5-7.) Hartford timely removed the action to this Court on November 23, 2020 based on diversity jurisdiction. (ECF No. 1.)

On March 24, 2021, with leave of the Court, Hartford filed its motion to dismiss which sought (1) dismissal of Plaintiff's claim for violation of Section 349; (3) striking of Plaintiff's demand for punitive damages; (4) striking of Plaintiff's demand for attorney's fees; and (4) dismissal of the Complaint as against Hartford and substituting the proper defendant Sentinel Insurance Company, Limited ("Sentinel"). (ECF No. 12.) On January 10, 2022, the Court issued an Opinion & Order granting Hartford's partial motion to dismiss. (ECF No. 22.) Sentinel substituted Hartford as defendant and filed an answer to the Complaint on February 1, 2022. (ECF No. 23.)

On April 24, 2023, the parties completed discovery. On or about October 24, 2023, with leave of the Court, the parties filed their respective motions for summary judgment on Plaintiff's remaining claims.

**STANDARD ON A MOTION FOR SUMMARY JUDGMENT**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of pointing to evidence in the record, including depositions, documents, affidavits, or declarations "which it believes demonstrate[s] the absence of a genuine issue of material fact," *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party may support an assertion that there is no genuine dispute of a particular fact by "showing . . . that [the] adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B). If the moving party fulfills its preliminary burden, the onus shifts to the nonmoving party to raise the existence of a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). To oppose summary judgment, "[s]tatements that are devoid of any specifics, but replete with conclusions" will not suffice. *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 452 (2d Cir. 1999); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (holding the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts"); *FDIC v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010) (holding the nonmoving party "may not rely on conclusory allegations or unsubstantiated speculation") (internal quotations and citations omitted).

A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *accord Gen. Star Nat'l*

*Ins. Co. v. Universal Fabricators, Inc.*, 585 F.3d 662, 669 (2d Cir. 2009); *Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008); *Benn v. Kissane*, 510 F. App'x 34, 36 (2d Cir. 2013). Courts must "draw all rational inferences in the non-movant's favor" when reviewing the record. *Kirkland v. Cablevision Sys.*, 760 F.3d 223, 224 (2d Cir. 2014) (citing *Anderson*, 477 U.S. at 248). Importantly, "the judge's function is not [ ] to weigh the evidence and determine the truth of the matter" or determine a witness's credibility. *Anderson*, 477 U.S. at 249. Rather, "[t]he inquiry performed is the threshold inquiry of determining whether there is the need for a trial." *Id.* at 250. A court should grant summary judgment when a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex*, 477 U.S. at 322.

The same standard of review applies when the Court is faced with cross-motions for summary judgment, as here. *See Lauria v. Heffernan*, 607 F. Supp. 2d 403, 407 (E.D.N.Y. 2009) (citations omitted). When evaluating cross-motions for summary judgment, the Court reviews each party's motion on its own merits and draws all reasonable inferences against the party whose motion is under consideration. *Morales v. Quintel Entm't, Inc.*, 249 F.3d 115, 121 (2d Cir. 2001).

## DISCUSSION

### I.  Admissibility of Murry's Expert Testimony and Report

As an initial matter, Defendant contends that Murray's expert report and testimony are inadmissible to establish that a singular weather event caused Plaintiff's loss.[2] (Def. Mem. at 16.) The Court must first address this issue before deciding the merits of the parties' respective summary judgment motions because Plaintiff primarily relies on Murray's testimony and report to

---

[2] Sentinel also argues that the Court should preclude (1) the Declaration of Herbert Weinstein (ECF No. 70); (2) Exhibits 1, 3, and 4 of the Declaration of Jonathan E. Neumann (ECF No. 68); and the portions of Murray's declaration wherein he argues that the 1977 Code Manual is "advisory only." (Murray Decl. ¶¶ 20-24). Plaintiff fails to address these arguments in its Reply. Even if the Court were to consider such evidence, the Court still finds that Plaintiff fails to raise a genuine issue of material fact for the reasons discussed *supra*.

raise a question of material fact, and "[i]t is appropriate for a district court ruling on summary judgment to consider only admissible evidence."[3] *Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.*, 269 F.3d 114, 123 (2d Cir. 2001); *see Spiegel v. Schulmann*, 604 F.3d 72, 81 (2d Cir. 2010) ("It is well established that, 'in determining the appropriateness of a grant of summary judgment, [the Circuit Court], like the district court in awarding summary judgment, may rely only on admissible evidence.'") (quoting *Ehrens v. Lutheran Church*, 385 F.3d 232, 235 (2d Cir.2004)).

Admissibility of expert testimony is governed by Federal Rule of Evidence 702. Rule 702 sets forth, in pertinent part:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. In determining whether expert testimony is admissible under this rule, federal courts apply the standard set forth in *Daubert*, in which the Supreme Court held that trial courts should "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993). The courts' "gatekeeping" obligation under *Daubert* "applies not only to testimony based on 'scientific'

---

[3] In deciding whether challenged expert testimony is admissible under Rule 702, a trial court may choose to hold an evidentiary hearing, *Atl. Specialty Ins.*, 970 F. Supp. 2d at 285, but the decision of "[w]hether to hold a *Daubert* hearing is within the discretion of the court," *Malletier v. Dooney & Bourke, Inc.*, 525 F. Supp. 2d 558, 581 (S.D.N.Y. 2007) (citing Committee Note to 2000 Amendment to Rule 702). An evidentiary hearing "is unnecessary when the evidentiary record pertinent to the expert opinions is already well-developed." *Malletier*, 525 F. Supp. 2d at 581. Here, the parties have briefed the issue of admissibility, Murray has been deposed, and his report and deposition testimony are before the Court on the instant motion; a *Daubert* hearing would add nothing to the record before the Court, and thus is unnecessary. *See, e.g., Atl. Specialty Ins.*, 970 F. Supp. 2d at 285 (finding evidentiary hearing unnecessary where parties had briefed admissibility issue, experts had been deposed, and expert reports were before court).

knowledge, but also to testimony based on 'technical' and 'other specialized' knowledge." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141 (1999).

"Rule 702 requires that expert testimony rest on knowledge, a term that connotes more than subjective belief or unsupported speculation." *Atl. Specialty Ins. v. AE Outfitters Retail Co.*, 970 F. Supp. 2d 278, 291 (S.D.N.Y. 2013) (internal quotation omitted); *see In re Rezulin Products Liab. Litig.*, 309 F. Supp. 2d 531, 541 n.17 ("[T]he word 'knowledge' connotes more than subjective belief or unsupported speculation." (quoting *Daubert*, 509 U.S. at 590)). Further, an expert's opinion must be "sufficiently grounded in reliable facts." *Atl. Specialty Ins.*, 970 F. Supp. 2d at 285. "[W]hen an expert opinion is based on data, a methodology, or studies that are simply inadequate to support the conclusions reached, *Daubert* and Rule 702 mandate the exclusion of that unreliable opinion testimony," *Id.* at 266; *see Atl. Specialty Ins.*, 970 F. Supp. 2d at 285 ("When presented with an expert opinion that is not sufficiently grounded in reliable facts, '[a] court may conclude that there is simply too great an analytical gap between the data and the opinion proffered.'") (quoting *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)) (alteration in original).

In the instant case, Murray's report and testimony are inadmissible as expert testimony because his conclusion that the outward bulging of the veneer wall was caused by a "singular event resulting from the weather" is based on "nothing more than subjective belief or unsupported speculation." *Clarke v. Travco Ins. Co.*, No. 13-CV-5140 NSR, 2015 WL 4739978, at *5 (S.D.N.Y. Aug. 7, 2015). In his expert report, Murray provides no basis for his conclusion, other than the mere fact that weather data showed rain and high winds on the relevant date. (Murray Rebut. Rpt. at 1-2.) Murray's expert opinion consists of a single conclusory statement that "excessive rain along with pressure from 30 to 46 MPH wind gusts played a significant role in the singular event causing the wall to displace outward. (*Id.* at 2-3.) Similarly, regarding the lack of

metal ties, Murray claims that "the lack of metal ties [was] *most likely* the result of disintegration and/or complete disengagement from the veneer during the aforementioned event" without providing any factual or technical basis to support his conclusion. (*Id.* (emphasis added).)

In the declaration he submitted in support of Plaintiff's summary judgment motion, Murray provides slightly more information for the bases of his conclusion—he declares that "the gap in vinyl floor tiles along with tears in the wall coverage represent an event-based occurrence." (Murray Decl. ¶¶ 10, 18.) Yet Murray again fails to provide any explanation for how or why these observations support his conclusion. The June Caseworks Report is similarly lacking. Murray leaves the Court asking *how* a sudden influx of water during this alleged singular weather-based event resulted in the outward bulging of the veneer wall. Even more, the Court questions *what* Murray based his conclusion on, beyond his engineering expertise.

Beyond the lack of a technical or factual explanation for his conclusion, Murray also simply fails to identify the "singular event" he *avers* caused Plaintiff's loss. That too is pure speculation. Murray testifies that he "did not make any conclusions . . . on what the event was" and at the time did not know "if [he could] point to anything that's a specific event." Murray Tr. 130:3-131:3. When asked directly which "singular event" he referred to in the Caseworks Report, Murray testified that he "think[s] it's the storm that was referenced in the EFI report." *Id.* 142:10-20. Murray thus seemingly noted the reported heavy rain and high winds in the EFI report, and then made the logical leap that the weather caused the bugling of the exterior veneer wall without showing any work as to how he reached that conclusion.[4]

_____

[4] Murray's theory regarding the thawing and freezing of water in the wall cavity is similarly speculative. First, Murray misconstrues Byer's argument. Byer does not concede that thawing/freezing could cause damage like that at issue here. Rather, Byer explicitly states moisture infiltration from a singular event, as Murray theorizes, "does not cause lateral movement and damage to brick veneer." (Byer Decl. ¶ 39.) Byer hypothesizes that water infiltration and then the subsequent freezing and expansion of that water in the wall cavity *could* cause such damage but concludes given that the damage occurred during the summer that did

The Court finds Murray's expert opinions regarding the cause of the damage to the brick veneer wall rest upon unsupported speculation. Thus, the Court cannot consider the Murray's conclusion that a single, weather-based occurrence caused the damage to the brick veneer wall as an expert opinion in deciding the instant motion for summary judgment.

## II.  Interpreting the Policy and Whether It Excludes the Damage to Plaintiff's Property

Defendant argues Plaintiff's claim is barred by the negligent work and rust and corrosion exclusion under the Policy. Specifically, Defendant argues it has produced *prima facie* evidence that the damage was caused by faulty construction of the Building's cavity wall system in violation of the 1977 Code. Plaintiff responds that (1) only the negligent work exclusion applies; (2) the experts disagree whether there was negligent work, and (3) regardless, the ensuing loss exception applies.

For the reasons stated below, the Court finds Plaintiff has failed to prove or raise the existence of a genuine issue of material fact that would necessitate a trial.

### A.  Insurance Policy Interpretation Principles in New York

"Insurance policies are contracts and are therefore interpreted according to the rules of contract interpretation." *Frazer Exton Dev., L.P v. Kemper Env., Ltd.*, 153 F. App'x 31, 32 (2d Cir. 2005) (citing *World Trade Ctr. Props., L.L.C. v. Hartford Fire Ins. Co.*, 345 F.3d 154, 183-84 (2d Cir.2003)). Under New York[5] law, "an insurance contract is interpreted to give effect to the intent

---

not happen in this case. (*Id.*) Regardless, Murray's argument that the freezing/expansion of water occurred in the winter and the heavy July rainstorm later revealed the damage is mere conjecture—he even calls it "a possibility." (Murray Decl. ¶ 17.)

[5] New York law is controlling in this matter. Because this case was removed from the Supreme Court of the State of New York, New York County based on diversity of citizenship, the choice of law rules of New York apply. Here, Plaintiff is a citizen of New York, and the subject property is located in New York. In addition, the injury (the damage to Plaintiff's property) occurred in New York. Thus, the substantive law of New York applies to this matter as well. *See O'Neill v. Yield House, Inc.*, 964 F. Supp. 806, 809 (S.D.N.Y. 1997). This is not disputed by the parties.

of the parties as expressed in the clear language of the contract." *Morgan Stanley Group Inc. v. New England Ins. Co.*, 225 F.3d 270, 275 (2d Cir. 2000).

When interpreting an insurance policy in a matter where New York law applies, "the initial question for the court on a motion for summary judgment is 'whether the contract is unambiguous with respect to the question disputed by the parties.'" *SCW West LLC v. Westport Ins. Corp.*, 856 F. Supp. 2d 514, 524 (E.D.N.Y. 2012) (quoting *Int'l Multifoods Corp. v. Commercial Union Ins. Co.*, 309 F.3d 76, 83 (2d Cir. 2002)). Ultimately, "[t]he matter of whether the contract is ambiguous is a question of law for the court." *Law Debenture Trust Co. of N.Y. v. Maverick Tube Corp.*, 595 F.3d 458, 465-66 (2d Cir. 2010).

An ambiguity exists in a contract where its terms "could suggest more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." *Int'l Multifoods*, 309 F.3d at 83 (quoting *Morgan Stanley Group Inc. v. New Eng. Ins. Co.*, 225 F.3d at 275). Similarly, because insurance policies are analyzed as contracts generally, "a provision in an insurance policy is ambiguous when it is reasonably susceptible to more than one reading." *Haber v. St. Paul Guardian Ins. Co.*, 137 F.3d 691, 695 (2d Cir. 1998). On the other hand, there is no ambiguity where the language of an insurance policy has "a definite and precise meaning, unattended by danger of misconception in the purport of the policy itself, and concerning which there is no reasonable basis for a difference of opinion." *Breed v. Ins. Co. of N. Am.*, 46 N.Y.2d 351, 355 (1978); *Hunt Ltd. v. Lifschultz Fast Freight, Inc.*, 889 F.2d 1274, 1277 (2d Cir. 1989). That the parties set forth competing interpretations in litigation proceedings does not render otherwise plain and clear language ambiguous. *See Seiden Assocs. Inc. v. ANC Holdings, Inc.*, 959 F.2d 425, 428

14

(2d Cir. 1992) (contractual language "is not made ambiguous simply because the parties urge different interpretations.").

"When insurance contracts contain an exclusion provision, the insurer generally bears the burden of proving that the claim falls within the scope of an exclusion by establishing that the exclusion is stated in clear and unmistakable language, is subject to no other reasonable interpretation, and applies in the particular case." *Lantheus Med. Imaging, Inc. v. Zurich Am. Ins. Co.*, 255 F. Supp. 3d 443, 453 (S.D.N.Y. 2015), *aff'd*, 650 F. App'x 70 (2d Cir. 2016) (quoting *Seneca Ins. Co. v. Kemper Ins. Co.*, No. 02 Civ. 10088(PKL), 2004 WL 1145830, at *10 (S.D.N.Y. May 21, 2004), and citing *Seaboard Sur. Co. v. Gillette Co.*, 64 N.Y.2d 304, 311, 486 N.Y.S.2d 873, 476 N.E.2d 272 (1984)) (cleaned up). Once an exception to an applicable exclusion is raised, the burden shifts to the insured to establish coverage. *Id.*

B.  *Application of Policy Interpretation Principles to the Instant Motion*

1.  <u>Exclusions Asserted by Sentinel</u>

As a threshold matter, Plaintiff challenges Sentinel's assertion that it denied Plaintiff's claim based on "rust and corrosion" and "negligent work." (Pl. Opp. at 4.) Specifically, Plaintiff argues Sentinel waived any other bases for exclusion by identifying in its denial letter the specific bases for denial—"negligent work" and "wear tear and deterioration." (*Id.*) According to Plaintiff, Defendant thus cannot rely on the exclusion for rust and corrosion.

Plaintiff is mistaken. As Sentinel observes, New York state courts have expressly rejected this argument. The New York Court of Appeals held that "the failure to disclaim based on an exclusion will not give rise to coverage that does not exist," thus an insurer's "right to disclaim coverage based on a policy exclusion can only be defeated by estoppel." *New York Univ. v. Continental Ins. Co.,* 87 N.Y.2d 308, 310, 639 N.Y.S.2d 283, 662 N.E.2d 763; *see also Cnty. of Dutchess v. Argonaut Ins. Co.*, 150 A.D.3d 672, 54 N.Y.S.3d 78, 82 (2017) ("Waiver . . . does not

apply here because 'failure to disclaim based on an exclusion will not give rise to coverage that does not exist.'") (citations omitted). And "when an insurer timely reserves its right to decline coverage and takes no action inconsistent with that denial of coverage, estoppel does not apply." *Peleus Ins. Co. v. Atl. State Dev. Corp.*, 587 F. Supp. 3d 7, 21 (S.D.N.Y. 2022) (citing *U.S. Underwriters Ins. Co. v. Allstate Ins. Co.*, No. 10-CV-2353 WFK JMA, 2013 WL 3148636 (E.D.N.Y. June 19, 2013)) (applying New York common law). Sentinel timely reserved all its rights under the policy by sending Plaintiff a letter dated July 17, 2019 (*see* Boyer Decl., Ex. G)— the same day Plaintiff filed its claim—precluding estoppel. *See id.*

Plaintiff only cites *Olin Corp.* in support of its argument. In *Olin Corp.*, the Second Circuit, via summary order, held that an insurer waived *a* defense to coverage, in that case a "late notice defense." *Olin Corp. v. Certain Underwriters at Lloyd's London & London Mkt. Ins. Companies*, 347 F. App'x 622, 628 (2d Cir. 2009). Here, Sentinel timely asserted its affirmative defense based on the exclusions provision in the Policy. (*See* ECF No. 23, Sentinel's Answer ¶ 33.) The Court therefore considers both the "rust and corrosion" and "negligent work" exclusions.

### 2. Whether the "Rust and Corrosion" and "Negligent Work" Exclusions Apply

Sentinel argues it adduced evidence that Plaintiff's claim falls under the negligent work and rust and corrosion exclusions, and therefore coverage is barred under the Policy. (Def. Mem. at 11-12.) Specifically, Sentinel argues it has produced *prima facie* evidence that the damage was caused by faulty construction of the Building's cavity wall system in violation of the 1977 Code. To support its assertion, Sentinel points to the conclusions of its expert, Sarah G. Byer., a Principal Engineer of EFI. Sentinel retained Byer to inspect the Building and "determine the cause of the movement and failure of the Building's brick veneer." (Byer Decl. ¶¶ 1, 3.) In her expert report and declaration, Byer identified three ways the wall system was improperly constructed: (1) the improper spacing of the metal brick ties; (2) improper anchorage of the infill wall framing to the

main building structure; and (3) lack of weep holes or metal flashing to prevent moisture deterioration.

First, Byer opined that the metal brick ties used in the construction of the Building's cavity wall system were improperly spaced in violation of the 1977 Code. (Byer Decl. 27, 29-31.) She further concluded that the Building's brick veneer did not have weep holes or metal flashing— which permit drainage of the wall cavity and prevent moisture deterioration—resulting in chronic and repeated moisture exposure to metal brick ties.[6] (*Id.* at 35.) This chronic, repeated moisture exposure caused the brick ties to rust, corrode, and eventually fail which in turn caused the outward movement of the Building's brick veneer. (*Id.*) Finally, Byer observed no evidence that the brick veneer had been properly anchored to the main building structure, exacerbating the outward movement and separation of the brick veneer. (*Id.* ¶ 36.) In reaching her conclusions, Ms. Byer reviewed documents provided by Sentinel, analyzed weather data, and conducted a visual inspection of the building. (Byer Decl. ¶¶ 5, 7, 12-24.)

The Court finds that Byer's expert opinions are sufficient to meet Sentinel's burden to establish a *prima facie* basis that Plaintiff's damages were caused by "rust and corrosion" and "negligent work" within the meaning of the policy exclusions. The burden now shifts to Plaintiff to establish a triable issue of fact. *Superhost Hotels Inc. v. Selective Ins. Co. of Am.*, 160 A.D.3d 1162, 75 N.Y.S.3d 124 (2018) (citations omitted).

To meet this burden, Plaintiff argues there is a "duel of experts" whether there was negligent work. (Pl. Opp. at 9-10.) Plaintiff proffers the expert opinion of John Paul Murray, RA,

---

[6] In a footnote, Plaintiff argues this conclusion "is entirely conclusory and contains no support whatsoever in the record." (Pl. Opp. at 8 n.2.) Plaintiff continues that "[i]n none of the report of either Donan, L&M, or EFI is there any reference to rust, corrosion, and failure of brick ties." (*Id.*) Plaintiff then goes on to concede that the L&M and EFI reports both mention rust and corrosion, respectfully. (*Id.*) Moreover, Byer's opinion is not conclusory because Byer explained that weep holes permit moisture to exit the wall cavity and should be installed to prevent moisture deterioration. (Byer Decl. ¶ 27.)

AIA, QEWI to rebut Byer's expert conclusions. As the Court previously outlined, Byer submits three causes of the damage. Because Plaintiff fails to raise a material dispute of fact with respect to two of the three purported causes, the Court finds for Defendant.

*Lack of Weep Holes*. First, Plaintiff does not dispute Sentinel's contention that "water intrusion" caused the damage. Plaintiff offers no rebuttal to Byer's opinion that weep holes or flashing should have been installed in the wall. Nor does Plaintiff dispute Byer's conclusion that the lack of weep holes resulted in moisture infiltration, which caused the brick ties to rust, corrode, and fail, and ultimately caused the brick veneer to move outward.

Instead, Plaintiff repeatedly argues water intrusion from a single, weather-based event caused the outward bulging of the wall. (*See* Pl. Opp. at 11; Pl. Reply at 2-4.) However, Plaintiff never provides any basis for this contention. As discussed above, Murray opines that an "event-based occurrence," *i.e.* "an event that caused the separation to finally take place, although it may have been precipitated by something taking place earlier," caused the damage. (*Id.*¶ 10.) Murray, however, never explains *how* the singular weather event might have caused the brick veneer wall to bulge outward, other than continually asserting "water intrusion." Plaintiff thus offers no alternative explanation for the damage. Instead, Plaintiff inexplicably argues that "Defendant cannot point to any exclusion in the policy that would exclude long-term water extrusion." (Pl. Opp. at 12.) However, Sentinel did just that by arguing that long-term water intrusion—caused by moisture exposure from the failure to include weep holes or flashing—led to the rusting and corroding of the brick ties. And Plaintiff offers no evidence—expert or otherwise—to rebut this conclusion.[7]

---

[7] Plaintiff also argues Defendant "waived" its bases for exclusions and the Court should not "allow Defendant, through its expert, to now, 4 years after-the-fact, retroactively come up with new bases for denial." (Pl. Opp. at 14.) Plaintiff, however, cites no case law in support of its position.

*Improper Anchorage of the Infill Framing*. Similarly, Murray attempts to rebut Byer's conclusions regarding the improper anchoring of the infill framing by claiming that "significantly larger opening would have had to have been made" to reach such a conclusion. (Murray Decl. ¶ 16.) Murray, however, again fails to provide any factual or technical explanation to support this conclusory statement. Otherwise, Murray does not dispute that the Building's infill wall was not properly anchored to the main building structure.

*Improper Spacing of the Brick Ties*. Finally, Plaintiff disputes Byer's conclusions regarding the improper spacing of the brick ties. Specifically, Murry argues (1) Donan and Byer used inadequate and unreliable methods to calculate the spacing of the wall ties; (2) Donan did not consider the vertical staggering of brick ties; and (3) Sentinel failed to argue the spacing of the wall ties were not in compliance with the governing code because the 1977 Code is "advisory only." (Murray Decl. ¶ 6-8, 11-15, 19-23, 25-26.) The Court declines to address these arguments. Whether the brick ties were properly spaced is irrelevant. Even if Plaintiff proved that the spacing of the brick ties were not in violation of any construction standards, Plaintiff's expert fails to rebut that the failure to install weep holes and the improper anchoring of the infill wall constitute negligent work. Furthermore, Plaintiff does not dispute Sentinel's assertion that this negligent work caused Plaintiff's loss.

*Certificate of Occupancy*. The only other evidence Plaintiff cites is the Certificate of Occupancy. Plaintiff questions how the Building obtained it if the construction did not meet the building codes in effect at the time. (Murray Decl. ¶¶ 9, 24.) The Certificate of Occupancy is insufficient to establish that the Building's construction complied with the governing code, and certainly insufficient to rebut Sentinel's undisputed evidence that (1) the improper anchorage of the infill wall and (2) the rust and corrosion of the brick ties caused the outward bulging of the

brick veneer wall. *See Powers ex rel. Powers v. 31 E 31 LLC*, 24 N.Y.3d 84, 93, 20 N.E.3d 990 (2014) (certificate of occupancy "inadequate to establish that the setback roof fully complied with all code mandates on the date of its issuance or 29 years later on the day plaintiff's.").

Sentinel adduces *prima facie* evidence that faulty construction—specifically the lack of weep holes and improper anchorage of the infill wall—caused Plaintiff's damage. In response, Plaintiff does not dispute Sentinel's expert conclusions and fails to provide an alternative explanation supported by evidence in the record. Because Plaintiff fails to establish a triable issue of fact, the Court finds that Sentinel has shown that an exclusion applies to deny Plaintiff coverage under the Policy.[8] The Court now considers whether Plaintiff has shown that an exception to the exclusion provides coverage.

### 3.    The Ensuing Loss Provision

Plaintiff now bears the burden of establishing that an exception to the exclusions applies. To do so, Plaintiff argues the ensuing loss provision applies. The ensuing loss provision in the Policy[9] provides: "We will not pay for loss or damage caused by or resulting from any of the following [including Negligent Work]. But if physical loss or physical damage by a Covered Cause of Loss results, we will pay for that resulting physical loss or physical damage." (Boyer Decl., Ex. A at 46.) Specifically, Plaintiff argues that even if there was negligent work, water intrusion—a covered cause—caused the physical damage to the brick veneer wall.

"Ensuing loss" is a term of art in insurance law. Ensuing loss provisions "provide[] coverage when, as a result of an excluded peril, covered peril arises and causes damage." *Platek*

---

[8] In the section of its brief wherein it argues against an exclusion Sentinel did not assert, Plaintiff argues in a single sentence that negligent work is the efficient proximate cause of any damage. (Pl. Opp. at 9.) Because the Court finds Plaintiff failed to rebut either the rust and corrosion exclusion or the negligent work exclusion, this argument is moot.
[9] Sentinel does not dispute that the Policy contains a valid ensuing loss provision, but argues it is inapplicable here. (*See* Def. Reply at 11-13.)

*v. Town of Hamburg*, 24 N.Y.3d 688, 694, 26 N.E.3d 1167, 1171 (2015). "Under New York law, Plaintiff would be entitled to coverage under an exception for ensuing loss if and to the extent that it could prove collateral or subsequent damage occurred to other insured property as a result of the excluded peril." *Lantheus Med. Imaging, Inc. v. Zurich Am. Ins. Co.*, 255 F. Supp. 3d 443, 462-63 (S.D.N.Y. 2015), *aff'd*, 650 F. App'x 70 (2d Cir. 2016). Where a property insurance policy contains an ensuing loss exception, "courts have sought to assure that the exception does not supersede the exclusion by disallowing coverage for ensuing loss directly related to the original excluded risk." *Platek*, 24 N.Y.3d at 694 (collecting cases). Thus, "courts construing policies containing exclusions for deterioration, wear and tear, rotting, dampness and the like have refused to apply an ensuing loss exception to cover water damage where water is arguably a cause of the damage but not a consequence of the otherwise excluded peril." *Rapid Park Indus. v. Great N. Ins. Co.*, No. 09 CIV. 8292 JSR, 2010 WL 4456856, at *4 (S.D.N.Y. Oct. 15, 2010), *aff'd*, 502 F. App'x 40 (2d Cir. 2012) (collecting cases).

The Court's decision in *Montefiore* is directly analogous. In that case, the Court rejected plaintiff's argument that even if a collapse of a brick façade set into motion a chain of events that gradually contributed to the loss, water infiltration and excessive wall movement were intervening causes that resulted in an ensuing loss. *Montefiore Med. Ctr. v. Am. Prot. Ins. Co.*, 226 F. Supp. 2d 470, 479 (S.D.N.Y. 2002). The Court reasoned that the loss was due to the collapse of "the very portion of building that is claimed to have been designed defectively" and "[t]here is no claim that the façade fell onto any other portion of the property or, indeed, of any other type of damage." *Id.*

The same is true here. Plaintiff is correct and the parties agree—the physical damage to the brick veneer was caused by water intrusion. (Pl. Reply at 4.) Plaintiff also does not dispute that the water intrusion was the direct result of the faulty construction of the wall system in which weep

holes or metal flashing were not installed to prevent moisture deterioration. Thus, it is clear that the alleged nonexcluded cause—water intrusion—grew out of the excluded one—negligent construction and/or rust and corrosion. As discussed above, Plaintiff's argument that the water intrusion was an "intervening covered cause of loss" (Pl. Reply at 4) is a losing one.

In the first case Plaintiff cites, the New York state court held that the ensuing loss exception provided coverage for faulty workmanship that resulted in a fire. *Fruchthandler v. Tri-State Consumer Ins. Co.*, 171 A.D.3d 706, 708, 96 N.Y.S.3d 649 (2019) (citing *Montefiore Med. Ctr.*, 226 F. Supp. 2d at 479.) The court reasoned that the damage was caused to property "wholly separate from the defective property itself." (*Id.*) The court reached the same conclusion in *Ewald*, where a family sought coverage for water damage throughout their home caused by defective plumbing. *Ewald v. Erie Ins. Co. of New York*, 214 A.D.3d 1382, 1386, 185 N.Y.S.3d 465 (2023). Because Plaintiff sought "coverage not for fixing or repairing the plumbing, but rather for the extensive damage that ensued elsewhere throughout the house," the Court found the ensuing loss exception applied. *Id.* at 1387-38.

That the water intrusion caused damage to property "wholly separate" from the brick veneer wall is precisely what Plaintiff has failed to demonstrate. Here, the wall structure was improperly constructed, leading to water intrusion, which in turn damaged the brick veneer of the wall. No separate, subsequent, or collateral damage arose from the faulty construction, therefore the ensuing loss exception does not apply. *See Rapid Park Indus.*, 2010 WL 4456856, at *4 (finding plaintiff failed to identify an exception to the applicable exclusion because it failed to provide evidence "that the water damage was subsequent or collateral to a covered peril"); *Spindler v. Great N. Ins. Co.*, No. 13-CV-5237(JS)(GRB), 2016 WL 899266, at *2 (E.D.N.Y. Mar. 9, 2016) ("The classic example of an ensuing loss is a fire that results from an earthquake. An insurance

policy may exclude coverage for damage caused by the earthquake, but a subsequent fire that was a 'but for' cause of the earthquake would still be covered as an 'ensuing loss.'").

Plaintiff attempts to circumvent the lack of collateral or subsequent damage by arguing that the interior cavity and interior wall system and the outside brick veneer are somehow separate properties. (*See* Pl. Reply at 8.) The Court is unpersuaded by such an inane argument. As a threshold matter, Plaintiff neither explains *how* the water intrusion caused the outside wall to bulge outward or articulates *why* the interior and exterior walls should be treated separately rather than as a system. Moreover, Byer explains that the Building used a cavity wall system consisting of an exterior wall and interior wall and a gap between the two called the cavity. (Byer Decl. ¶ 26.) The exterior wall and interior wall are connected using brick ties and anchors—the same brick ties Byer argues rusted, corroded, and failed due to water intrusion. (*Id.* ¶¶ 26, 35.) Therefore, defects in the interior wall and interior cavity cannot reasonably be separated from defects in the outside wall. To accept Plaintiff's argument and apply the ensuing loss exception would be to "resurrect coverage for an excluded peril" *Platek*, 24 N.Y.3d at 688.

## CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is GRANTED and Plaintiff's cross-motion for summary judgment is DENIED. The Clerk of Court is respectfully directed to terminate the motion at ECF Nos. 49 and 67, to enter judgment for the Defendant, and to terminate the action.

Dated:    August 20, 2024                              SO ORDERED:
          White Plains, New York

                                        _____
                                            NELSON S. ROMÁN
                                        United States District Judge